**J. B. KEYS, Plaintiff,**

v.

**Dr. Granville M. SAWYER et al., Defendants.**

**Civ. A. Nos. 72–H–1384, 72–H–1385.**

United States District Court, S. D. Texas, Houston Division.

Jan. 30, 1973.

J. B. Keys, pro. se.

Jack Sparks, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM AND ORDER

NOEL, District Judge.

Plaintiff brings these actions against the officials, administrators and directors of Texas Southern University, alleging a denial of his right to a legal education. Specifically, plaintiff's prayer requests this Court to direct defendants to "remove the grade of 'F' in Legislation, Law 715 from plaintiff's transcript" (72–H–1384) and "to produce plaintiff's final examination paper in Taxation 1, Law 740 and determine whether his exam had received proper grading." (72–H–1385). The true goal of these lawsuits is to have plaintiff readmitted to Texas Southern University School of Law, with the two failing marks expunged from his academic transcript. Jurisdiction is founded upon 28 U.S.C. § 1343. Substantively, it is put upon 42 U.S.C. § 1981 et seq. Some elaboration of the facts surrounding plaintiff's claims will illuminate the present posture of the case.

Plaintiff formally enrolled in the Texas Southern University School of Law for three separate semesters: summer semester 1969, summer semester 1970 and fall semester 1970. During the 1969 summer term, plaintiff registered for the course Legislation, Law 715 taught by Professor Raymond Jordan. However, he received no credit for the course, recording a failing grade as a result of his refusal to take the final examination at the prescribed time. The following summer session, plaintiff registered for Taxation 1, Law 740 instructed by Professor Albert Lehrman. His final grade in this course was also an "F."

Throughout the subsequent semester, plaintiff made various demands upon Professor Lehrman, Dean King and even President Sawyer, all University officials and defendants in these suits, in an unsuccessful attempt to have these grades changed to passing marks. Meanwhile, plaintiff had been charged by two members of the faculty, one of whom is a defendant here, with publishing and distributing false and libelous statements concerning them.

After proper notice, the Law School Disciplinary Committee held a full hearing on the libel charges at which time plaintiff exercised his right of crossexamination and presented his side of the case. Prior to the Committee's announcement of any decision, plaintiff voluntarily withdrew from the Law School by letter addressed to President Sawyer dated December 1, 1970. Shortly thereafter, the Disciplinary Committee resolved the issue of guilt against plaintiff and discharged him from the University, subject to his right to petition for readmission. At that time plaintiff had the right to appeal his case to the Dean of the Law School, to the President of the University, and finally to the Board of Regents of the University.

Plaintiff elected none of the foregoing remedies but chose instead to file a lawsuit seeking his reinstatement. CA No. 71–H–420 (filed April 15, 1971). This initial claim was dismissed on a motion for summary judgment by defendants. Memorandum and Order dated December 30, 1971, a copy of which is appended hereto. Plaintiff appealed the dismissal to the United States Court of Appeals for the Fifth Circuit, but had his appeal dismissed on March 24, 1972.

Now comes plaintiff anew complaining of the same series of circumstances and proceedings previously litigated and again prays for federal intervention in the academic arena. In this endeavor, as before, plaintiff must fail.

Plaintiff argues that the right to a public education is one of the rights secured to him by the United States Constitution. However, there is no language in the Constitution wherein the right of any person to an education is established, either expressly or by implication. Flemming v. Adams, 377 F.2d 975 (10th Cir. 1967) cert. denied 389 U. S. 898, 88 S.Ct. 219, 19 L.Ed.2d 216 (1967). Although there is a constitutional right to an equal opportunity to partake of public education offered by a

state, Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), plaintiff alleges no discriminatory practices which would entitle him to relief under the principles of *Brown* and its progeny. Peacock v. Riggsbee, 309 F.Supp. 542 (N.D.Ga. 1970).

■■■■ Jurisdiction over the individual defendants is predicated upon 28 U.S.C. § 1343 conferring upon the United States District Courts jurisdiction over civil actions brought pursuant to the civil rights laws. 42 U.S.C. § 1981 et seq. However, plaintiff fails to state a claim upon which relief can be granted pursuant to 42 U.S.C. §§ 1981–1983. For a cause of action to be based upon 42 U.S.C. § 1981, there must be some allegation of *racial* or other wrongful discrimination. None is apparent from the record presented in the case at bar. Likewise, the complaint in the present action fails to contain allegations from which a violation of 42 U.S.C. § 1983 may be inferred. The statutory prerequisite for liability under § 1983 is a defendant who has acted "under color of state or local law" and a plaintiff who has been "deprived of constitutional rights, privileges or immunities." Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The first mentioned statutory requirement has been satisfied in that defendants readily admit they are state officials acting in most instances under the color of state law. However, the second allegation required by the statute, the deprivation of a constitutional right, has not been met. This Court adheres to its earlier position that a student with a grievance "may not, by simply couching that grievance in constitutional terms, employ Section 1983 to transform a federal district court into a sort of educational ombudsman whose function is to review the everyday actions of local school officials." Egner v. Texas City Independent School District, 338 F.Supp. 931, 937 (S.D.Tex.1972).

■■■■ The circumstances of this case dictate another reason why plaintiff would not be entitled to prevail. On December 1, 1970 plaintiff voluntarily withdrew from the Texas Southern University School of Law. He cannot now be heard to complain that there was a denial of due process or equal protection of the law. Smith v. Board of Regents, State Senior College, 426 F.2d 492 (5th Cir. 1970). The facts of this case amply reveal that plaintiff willingly extricated himself from the academic environment. Although disciplinary proceedings were pending at the time of his intentional withdrawal, plaintiff cannot two years later contend that his departure was the result of intimidation or coercion. After a fair presentation by both sides of the case, the Board could well have decided all issues in plaintiff's favor. Likewise, plaintiff could have appealed an unfavorable decision to several administrative echelons. Thus, by his voluntary withdrawal from the University, plaintiff forfeited any challenge on due process grounds.

■■■■ Still another reason consideration of plaintiff's cause is inappropriate by this forum is the belief that this case calls for judicial abstention. The doctrine of judicial abstention has been fashioned by federal courts sitting in equity to achieve a more principled allocation of business between the state and federal judiciaries and to minimize unnecessary conflict between those systems. Egner v. Texas City Independent School District, supra, at 940. Federal courts should not interfere or substitute their judgment and authority for that of local and state school authorities unless such action is clearly warranted to protect rights guaranteed by the Constitution. No such rights are present here. The gravamen of plaintiff's complaints is the basic unfairness of grading systems employed by two individual professors. It is difficult to imagine an area of academic life more suitable for judicial abstention. The assignment of grades to a particular examination must be left to the discretion of the instructor. He should be given the unfettered opportunity to assess a student's per-

formance and determine if it attains a standard of scholarship required by that professor for a satisfactory grade. The federal judiciary should not adjudicate the soundness of a professor's grading system, nor make a factual determination of the fairness of the individual grades. Such an inquiry would necessarily entail the complete substitution of a court evaluation of a complainant's level of achievement in the subject under review, and the standard by which such achievement should be measured, for that of the professor. It would be difficult to prove by reason, logic or common sense that the federal judiciary is either competent, or more competent, to make such an assessment.

University officials should have broad discretionary power to determine the fitness of a student to continue his studies. There is a compelling need and very strong policy consideration in favor of giving local school officials the widest possible latitude in the management of school affairs. Karr v. Schmidt, 460 F. 2d 609 (5th Cir. 1972). Only when there is a clear and convincing showing that an official acted in an arbitrary and capricious manner will the federal courts interfere with the exercise of such discretionary power. The case at bar provides no such showing. "Surely, the federal judiciary can perform no greater service . . . . than to leave the States unhampered in the performance of their purely local affairs." Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971) (Black, J.). In the instant case, the wisest and most appropriate course is one of judicial restraint.

Finally, plaintiff's actions must fail for the obvious reason that these identical issues have been previously litigated by these same parties. Under the doctrine of "res judicata," a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Lawlor v. National Screen Serv-

ice Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). Unless the complaint in the later action contains further allegations, the omission of which caused the complaint in the first action to be dismissed, a second action on identical issues is prohibited by a former judgment. Matthews v. Wolvin, 266 F. 2d 722 (5th Cir. 1959). The cases presently before the Court contain no additional events or matters which create a controversy different from 71–H–420. They are simply aspects of the original order so inextricably involved in the consideration of the first action that they must have entered into the composition and scope of the first judgment. Estevez v. Nabers, 219 F.2d 321, 323 (5th Cir. 1955).

This Court's inquiry, therefore, is limited to whether the decision in 72–H–420 (dismissed by Memorandum and Order dated December 30, 1971) was "on the merits." In that case, it was ordered that "defendant's motion for summary judgment is granted" and that "this is a final judgment." A judgment on the merits does not require determination of the controversy after a trial or hearing on the controverted facts. "It is sufficient if the record shows that the parties might have had their controversies determined according to their respective rights if they had presented all their evidence and the court had applied the law." Olsen v. Muskegon Piston Ring Co., 117 F.2d 163, 165 (6th Cir. 1941). Therefore by granting a motion for summary judgment pursuant to Rule 56, Fed.R. Civ.P. and thereby terminating the suit, a court has reached a final adjudication "on the merits." Moore's Federal Practice § 0.409 [1] (2nd ed. 1965).

In cause No. 72–H–420, defendant-University was found to be "entitled to judgment as a matter of law pursuant to Rule 56." That was a final judgment *on the merits* and these subsequent actions are necessarily barred by res judi-

cata. Compare, Drusky v. Judges of the Supreme Court, 324 F.Supp. 332 (W.D. Pa.1971) where a purported action under the Civil Rights Act was barred by res judicata arising from a summary judgment against plaintiff, in favor of the same defendants in a prior action based upon substantially similar allegations.

For the foregoing reasons, plaintiff's claims in their entirety are so deficient as to warrant their condemnation as frivolous. Therefore, these causes of action being totally devoid of any merit should be, and hereby are, dismissed.

Accordingly, defendant's motion to dismiss for failure to state a claim upon which relief can be granted is hereby granted.

The foregoing constitutes the Court's findings of fact and conclusions of law.

## APPENDIX

Memorandum and Order:

Plaintiff alleges violations of 42 U.S. C.A. § 1983 et seq. and 28 U.S.C.A. § 1343 et seq. in that officials and directors of Texas Southern University denied plaintiff a right to an education.

Defendants filed a motion to dismiss which motion is treated by this court as a motion for summary judgment under Fed.R.Civ.P. 12(b).

Plaintiff voluntarily withdrew from law school and was denied none of his constitutional rights. Defendant is entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56.

It is, therefore, Ordered, Adjudged and Decreed that defendants' motion for summary judgment is granted.

This is a final judgment.

Done at Houston, Texas, on this the 30th day of December, 1971.

/s/ John V. Singleton
United States District Judge